**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 7, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. §  808.10 and RULE 809.62.

Appeal No.　　**2021AP2209**

**STATE OF WISCONSIN**

Cir. Ct. No.  2020CV266

**IN COURT OF APPEALS
DISTRICT III**

---

PETER C. THARP,

　　PLAINTIFF-APPELLANT,

　V.

VILLAGE OF ROBERTS, VILLAGE BOARD OF ROBERTS, WILLARD MOERI, KATY KAPAUN, MARY SHERMON, SHAWN DAKOVICH, CHERYL JOHNSON, CHUCK PIZZI, RANDY WAUGHTAL AND THOMAS MANN,

　　DEFENDANTS-RESPONDENTS.

---

　　　　APPEAL from an order of the circuit court for St. Croix County: EDWARD F. VLACK, III, Judge.  *Affirmed*.

　　　　Before Stark, P.J., Hruz and Gill, JJ.

　　¶1　　GILL, J.　Peter C. Tharp sued the Village of Roberts and various other defendants (collectively, the Village Board), seeking declaratory judgment and a writ of mandamus.  Tharp's claims were based on the Village Board's

failure to "issue any municipal ordinance violations or citations regardless of parallel state statutes[,] effectively bypass[ing]" and "abolishing" the Village's municipal court. Later, in the context of his declaratory judgment claim, Tharp argued that the Village Board had violated separation of powers principles "by ceasing enforcement of its municipal ordinances."

¶2 The circuit court granted the Village Board's motion to dismiss Tharp's mandamus claim, and, later, granted summary judgment in favor of the Village Board on Tharp's declaratory judgment claim. The court concluded that, under *Vretenar v. Hebron*, 144 Wis. 2d 655, 663, 424 N.W.2d 714 (1988)—a mandamus case—the Village Board's decision not to enforce municipal ordinances was discretionary and did not violate separation of powers principles. Thus, according to the court, Tharp's mandamus claim could not lie, and his declaratory judgment claim was barred as a matter of law. The court subsequently entered a final order affirming its prior orders dismissing the mandamus claim and granting summary judgment on the declaratory judgment claim, and Tharp now appeals from that order.

¶3 We conclude that Tharp's mandamus claim is moot because the municipal court was lawfully abolished prior to this appeal. Further, we conclude that the circuit court properly granted summary judgment in favor of the Village Board on Tharp's declaratory judgment claim. Under our supreme court's holding in *Vretenar*, the Village Board's decision not to enforce the municipal ordinances was discretionary. Because it was a discretionary decision, declaratory judgment was not appropriate. Therefore, we affirm the court's order.

**BACKGROUND**

¶4      The relevant facts are undisputed.[1]  In 2004, the Village of Roberts established a municipal court.  Tharp was elected in 2017 as a municipal court judge to a four-year term ending in April 2021.

¶5      In March 2019, in contemplation of abolishing the municipal court, the Village Board voted to "authorize[] the then Village Police Chief … to stop issuing citations for municipal ordinance violations, regardless of parallel state statutes, and to transmit any and all citations to St. Croix County Circuit Court by issuing only citations for violations of adopted parallel state statutes."  According to the minutes of the Village Board meeting, the Village attorney explained that the Village was "still required to pay the fees associated with the [municipal] court" until the Village Board could formally abolish the court, but that stopping the enforcement of ordinances "sen[t] the signal that [it was] planning to not continue the [municipal] court when the time c[a]me[]."  The Village attorney also stated that he met with staff at the St. Croix County Circuit Court, who explained that they had "the ability to handle the capacity" of the Village Board's directive.

¶6      In August 2020, the Village Board unanimously voted to abolish the municipal court at the end of Tharp's then-current term.  Tharp continued to receive his full municipal court judge salary until the court was abolished at the end of his term in April 2021.

---

[1] Tharp has never argued in this case that the municipal court was abolished for an unlawful reason.  Therefore, like the circuit court, we do not find relevant Tharp's factual assertions regarding *why* the Village Board ultimately abolished the municipal court.

3

¶7 In August 2020, Tharp filed suit against the Village Board, seeking a writ of mandamus and declaratory relief. Specifically, Tharp requested that the circuit court issue an order requiring the Village Board "to immediately enforce municipal ordinance violations and cease any attempt to bypass" the municipal court. Further, Tharp sought a declaration that "municipal ordinance violations must be enforced by the [Village], and those violations be brought to the municipal court."

¶8 The Village Board filed a motion to dismiss both claims. The circuit court granted the motion with respect to the mandamus claim, but it denied the motion with respect to the declaratory judgment claim. Later, Tharp filed a motion for summary judgment on the declaratory judgment claim and argued that the Village Board had violated separation of powers principles and exceeded its authority. The court denied Tharp's motion for summary judgment, and it then granted summary judgment in the Village Board's favor, dismissing Tharp's declaratory judgment claim. *See* WIS. STAT. § 802.08(6) (2021-22).[2]

¶9 Tharp now appeals. Additional facts will be provided below as necessary.

## DISCUSSION

### I. Mandamus claim

¶10 "A writ of mandamus is a discretionary writ that is issued to compel the performance of a particular act by a lower court or governmental officer or

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

body." ***Klein v. DOR***, 2020 WI App 56, ¶36, 394 Wis. 2d 66, 949 N.W.2d 608. A writ of mandamus is properly issued only upon the showing of four prerequisites: "(1) a clear legal right; (2) a positive and plain duty; (3) substantial damages; and (4) the absence of any other adequate remedy at law." ***Id.***; *see also* ***Voces De La Frontera, Inc. v. Clarke***, 2017 WI 16, ¶11, 373 Wis. 2d 348, 891 N.W.2d 803. "[T]he duty to act on the part of the government official must be 'clear and unequivocal'; a circuit court erroneously exercises its discretion by issuing such a writ when the duty to be performed requires the exercise of discretion." ***Klein***, 394 Wis. 2d 66, ¶36 (citation omitted).

¶11 On appeal, the Village Board argues that Tharp's mandamus claim is moot because the municipal court was abolished in April 2021.

¶12 As an initial matter, Tharp contends that the Village Board's mootness argument is "waived" because the Village Board did not raise this argument before the circuit court.[3] Whether the Village Board raised the issue in the circuit court or not is immaterial to this particular appeal because, generally, a

---

[3] We interpret Tharp's waiver argument to actually be one of forfeiture. *See* ***State v. Ndina***, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (explaining that waiver and forfeiture are two distinct legal concepts). Tharp also contends that the Village Board's mootness argument is not properly before this court because the Village Board did not raise the issue "by motion … based on some event that occurred … during the pendency of the appeal."

In support of his motion argument, Tharp cites ***Ziemann v. Village of North Hudson***, 102 Wis. 2d 705, 711, 307 N.W.2d 236 (1981). In ***Ziemann***, our supreme court granted a plaintiff's petition for review from a decision of this court. ***Id.*** Prior to the supreme court's decision, the defendant filed a motion to dismiss the appeal on the ground that a recent action regarding a property in question had rendered the issue on appeal moot. ***Id.*** The supreme court agreed, concluding that the issue was moot when this court issued its decision in favor of the defendant. ***Id.*** ***Ziemann*** neither cited to nor created new law that requires a party to file a motion to dismiss on mootness grounds prior to an appellate court's decision. Therefore, ***Ziemann*** has no bearing on the timeliness or manner of the Village Board's mootness argument here. Nor are we aware of any such rule that would apply to the facts of this case. *See* WIS. STAT. RULE 809.14.

respondent may raise any argument that would support a lower court's action regardless of whether the argument was raised previously. *See State v. Holt*, 128 Wis. 2d 110, 124-25, 382 N.W.2d 679 (Ct. App. 1985); *superseded by statute on other grounds*, WIS. STAT. § 940.225(7). "Furthermore, it is well-established law in Wisconsin that an appellate court may sustain a lower court's ruling 'on a theory or on reasoning not presented to the lower court.'" *Blum v. 1st Auto & Cas. Ins. Co.*, 2010 WI 78, ¶27 n.4, 326 Wis. 2d 729, 786 N.W.2d 78 (citation omitted). We also note that the mandamus claim was undisputedly not moot when the court granted the Village Board's motion to dismiss in January 2021 because the municipal court was not abolished until April 2021. Thus, we will consider the Village Board's mootness argument.

¶13 Mootness is a question of law we review de novo. *Wisconsin State J. v. Blazel*, 2023 WI App 18, ¶41, 407 Wis. 2d 472, 991 N.W.2d 450. "An issue is moot when its resolution will have no practical effect on the underlying controversy. Because moot issues do not affect a live controversy, this court generally declines to reach them." *Id.*, ¶42 (citation omitted).

¶14 Tharp's challenge to the circuit court's dismissal of his mandamus claim is indeed moot. His amended complaint requested an order requiring the Village "to immediately enforce municipal ordinance violations and cease any attempt to bypass" the municipal court, and on appeal, he asks us to "reverse the [circuit] court's decision." As mentioned earlier, the municipal court was abolished in April 2021. As such, even if we decided that the court erred as a matter of law by granting the Village Board's motion to dismiss Tharp's mandamus claim, our reversal would have no "practical effect on the underlying

6

controversy." *See id.* (citation omitted). There would be no government official or body for us to direct action toward.[4]

¶15 Still, Tharp asks this court to consider the merits of his mandamus claim. "We may … choose to address moot issues in 'exceptional or compelling circumstances.'" ***Portage County v. J.W.K.***, 2019 WI 54, ¶12, 386 Wis. 2d 672, 927 N.W.2d 509 (citation omitted). Specifically, we may address a moot issue if at least one of five exceptions applies:

> (1) the issue is of great public importance; (2) the issue involves the constitutionality of a statute; (3) the issue arises often and a decision from [the appellate] court is essential; (4) the issue is likely to recur and must be resolved to avoid uncertainty; or (5) the issue is likely of repetition and evades review.

*Blazel*, 407 Wis. 2d 472, ¶42 (citation omitted).

¶16 Tharp focuses his arguments on exceptions one and five. According to Tharp, the first exception applies because "[o]ther municipalities could take similar action to that of the Village," and, therefore, the issue is "one of interest to … municipalities and municipal judges in Wisconsin." Similarly, Tharp cites the fifth exception, arguing that other municipalities can follow the Village's plan of abolishing a municipal court prior to appellate review, and thus escape that review.

---

[4] Tharp also contends that because "the circuit court reached the merits [of the mandamus claim], dismissing [his] appeal as moot is not proper since the Village [Board] has not asserted that the [court] erred by reaching the merits." However, as noted above, the Village Board could not raise the mootness issue in the circuit court at the time that court considered the merits of Tharp's request for a writ of mandamus. We therefore deem Tharp's contention without merit.

¶17    With regard to the fifth exception, Tharp overlooks the fact that our supreme court has explained that the "'capable of repetition, yet evading review doctrine' is limited to situations involving 'a reasonable expectation that the *same* complaining party would be subjected to the *same action* again.'"  *See J.W.K.*, 386 Wis. 2d 672, ¶30 (citations omitted).  Because Tharp does not contend that the Village Board will reinstate the municipal court in the future—or that he would seek election to a position with such a court—exception five does not apply here.

¶18    Further, Tharp's challenge to the dismissal of his mandamus claim is not of great public importance and interest.  As we will explain in the next section, the issues presented in this case fall squarely within present case law, regardless of whether on review of a mandamus claim or a declaratory judgment claim. *See Vretenar*, 144 Wis. 2d at 663.  Because the merits of Tharp's mandamus claim seeking "to immediately enforce municipal ordinance violations and cease any attempt to bypass" the municipal court have previously been addressed in *Vretenar*, a decision in this case is not of great public importance or interest.

## II.  Declaratory judgment

¶19    "The power of a [circuit] court to declare rights is broad in scope. There is specific authority under [WIS. STAT. § 806.04(1)] to 'declare rights, status, and other legal relations whether or not further relief is or could be claimed.'"  *Loy v. Bunderson*, 107 Wis. 2d 400, 407, 320 N.W.2d 175 (1982)

(citing § 806.04(1)). In order to maintain a declaratory judgment claim, a justiciable controversy must exist.[5] *See id.* at 409-10.

¶20 The circuit court in this case granted summary judgment in favor of the Village Board, dismissing Tharp's declaratory judgment claim on the merits. We review a grant of summary judgment pursuant to Wisconsin's Uniform Declaratory Judgments Act de novo, as we would any summary judgment decision. *Olson v. Town of Cottage Grove*, 2008 WI 51, ¶33, 309 Wis. 2d 365, 749 N.W.2d 211; WIS. STAT. § 806.04(7).

A. The Village Board did not exceed its authority.

¶21 The circuit court, relying on *Vretenar*, concluded that "the Village Board exercised discretion, the remedy for which is neither [m]andamus nor [d]eclaratory [j]udgment." Specifically, the court held that "the discretion to decide what cases are summoned before the municipal court is held by the Village" and that "[t]he power of the municipal court is to dispose [of] the cases that come before it, not to have control over what cases come before it."

¶22 Tharp argues that the circuit court incorrectly granted summary judgment in favor of the Village Board on his declaratory judgment claim because the Village Board exceeded its authority when it ceased enforcement of all

---

[5] The Village Board raises the question of whether Tharp's declaratory judgment claim is justiciable. *See Loy v. Bunderson*, 107 Wis. 2d 400, 409-10, 320 N.W.2d 175 (1982) (listing the four factors necessary for a declaratory judgment claim to be justiciable). Because the circuit court addressed the merits of Tharp's declaratory judgment claim, and because we ultimately agree with the court's conclusion, we will assume without deciding that Tharp's claim is justiciable. *See, e.g.*, *Papa v. DHS*, 2020 WI 66, ¶¶17, 31, 393 Wis. 2d 1, 946 N.W.2d 17 (analyzing the merits of a declaratory judgment decision made via summary judgment).

9

municipal ordinance violations. According to Tharp, *Vretenar* is distinguishable from the facts of this case.

¶23 In *Vretenar*, a town was "involved in roughly a dozen separate hearings in the … circuit court, traffic and misdemeanor court, and the United States bankruptcy court in its attempts to enforce" town ordinances against a resident, Glenn Staege. *Vretenar*, 144 Wis. 2d at 659. Despite these attempts, the plaintiffs—the Vretenars—filed a summary judgment motion seeking a writ of mandamus compelling town officials to prosecute and enforce the town ordinances to a greater degree against Staege. *Id.* at 658, 666. Specifically, the Vretenars alleged that the town "had failed to perform nondiscretionary legal duties." *Id.* at 658-59. The circuit court granted summary judgment in favor of the town officials, ruling that mandamus would not lie to compel them to perform discretionary acts. *Id.* at 659.

¶24 On appeal, our supreme court concluded that "the prosecution and enforcement of municipal ordinance violations are discretionary duties such that their performance cannot be compelled through mandamus." *Id.* at 663. The court reasoned:

> The plaintiffs would have us distinguish between the prosecutorial duties of district attorneys and those of town board members acting through the town attorney. We reject this distinction. While the former involves criminal laws and the latter involves civil forfeiture ordinances, the prosecutorial duties are similar in that each is responsible for pursuing with discretion violations of laws under the office's jurisdiction.
>
> The town board, acting through the town attorney, is not required to prosecute every infraction of the municipal ordinance code.
>
>  ….

> To hold otherwise would be tantamount to divesting a municipality of the discretion necessary for effective and efficient law enforcement.

*Id.* at 664-65. The court similarly rejected the plaintiffs' claim that, "while town officials have discretion to enact or modify ordinances, once they are enacted, all discretion of the town board ends with respect to enforcement and prosecution of the laws." *Id.* at 665. According to the court:

> Plaintiffs base this assertion upon their interpretation of selected powers of the town board: first, that the town chairman is empowered by statute to "[s]ee that town orders and ordinances are obeyed"; and second, that the town constable has been empowered by the town board "to enforce all local ordinances." However, the statutory duties of the district attorney are also preceded by the mandatory word "shall." [WISCONSIN STAT. §] 59.47 [(1985-86)] provides that the district attorney "shall … [p]rosecute all criminal actions before any court for her or his county…." This court has not interpreted this language to limit in any way the prosecuting attorney's discretion on whether to prosecute a particular case.

*Vretenar*, 144 Wis. 2d at 665-66 (first and second alterations in original; citations omitted). The court explained that mandamus for discretionary acts is appropriate "in some circumstances to compel a governmental body to exercise discretion in the first instance." *Id.* at 666. However, the court noted that "[o]nly where the legislature has designated limits of the prosecutorial discretion and defined situations in which the governmental body must act can performance be compelled through mandamus." *Id.*

¶25 According to Tharp, "*Vretenar* does not and cannot stand for the proposition that the Village [Board] has unfettered discretion to not enforce *any* municipal ordinance[]." He argues that, unlike here, the town in *Vretenar* did exercise its discretion by attempting to enforce the ordinances. Tharp contends

11

that the Village Board's decision not to enforce any ordinance "is the opposite of the exercise of discretion." The Village Board's actions in this case, according to Tharp, were not contemplated by the *Vretenar* court's reliance on prosecutorial discretion because a prosecutor cannot "stop enforcing any and all laws." In support of this particular argument, Tharp argues that the Village's police chief is required by ordinance to "see that all laws and ordinances of the village and state are enforced."

¶26  We conclude that *Vretenar* is on point, and that the circuit court did not err in relying upon it to dismiss Tharp's declaratory judgment claim. *Vretenar* did not hold that the town in that case was required to enforce the ordinances against the resident, although the town attempted to do so. Instead, the court held that "[o]nly where the legislature has designated limits of the prosecutorial discretion and defined situations in which the governmental body must act can performance be compelled through mandamus." *Vretenar*, 144 Wis. 2d at 666. Tharp fails to cite any legislative mandate dictating that the Village Board was required to enforce any ordinance. Tharp's arguments are particularly problematic because municipalities are not required to have ordinances at all, nor are they required to have municipal courts. *See* WIS. STAT. §§ 66.0103, 755.01(1), (2). The fact that a municipality has enacted ordinances and a municipal court does not mean that the municipality is without discretion to not enforce and prosecute those ordinances in municipal court.

¶27  We are similarly unpersuaded by Tharp's reliance on the Village ordinance requiring the police chief to "see that all laws and ordinances of the village and state are enforced" for his proposition that a municipality cannot stop enforcement of all ordinance violations. As noted above, our supreme court in *Vretenar* rejected a similar argument where the plaintiffs stated that all discretion

of the town board ended once the ordinances were enacted. *Vretenar*, 144 Wis. 2d at 665. The *Vretenar* court rejected that argument by citing to WIS. STAT. § 59.47, which provided that the district attorney "shall … [p]rosecute all criminal actions before any court for her or his county." *See Vretenar*, 144 Wis. 2d at 665-66 (alteration in original). Like *Vretenar*, we hold that the police chief ordinance does not "limit in any way the [Village Board's] discretion on whether to prosecute a particular case" or a particular ordinance. *See id.*

¶28 Additionally, the Village Board was not simply stopping the enforcement of all village ordinance violations. Instead, the Village Board was transferring the venue for enforcement of village ordinances with statutory parallels to the circuit court in preparation for the municipal court's eventual abolishment. *See* WIS. STAT. § 755.01(2). This conclusion is evident from the minutes of the March 11, 2019 Village Board meeting, which reflect that the Village Board discussed the "approval to move all citations to St. Croix County Circuit Court." The police chief was, therefore, effectively permitted to continue enforcement of certain ordinance violations, but at the statutory level and in the circuit court.

¶29 Further, Tharp does not explain where the line should be drawn between a discretionary decision to enforce ordinances, as dictated by *Vretenar*, and a requirement that some ordinances must be prosecuted, as Tharp suggests. Instead, he simply states that ordinances should "be prosecuted in municipal court *when appropriate*." (Emphasis added.) As *Vretenar* explained, "[P]rosecutorial duties are similar [to municipal duties] in that each is responsible for pursuing with discretion violations of laws under the office's jurisdiction." *Vretenar*, 144 Wis. 2d at 664. In other words, generally speaking, it is not the province of a court to dictate which crimes a prosecutor seeks to enforce. *See County of*

*Kenosha v. C & S Mgmt., Inc.*, 223 Wis. 2d 373, 400, 588 N.W.2d 236 (1999); *cf.* WIS. STAT. § 968.02(3) (allowing a circuit court to permit the filing of a complaint in specific circumstances "[i]f a district attorney refuses or is unavailable to issue a complaint"). We refuse to draw a seemingly arbitrary line for Tharp that would encroach on the principle of prosecutorial discretion in the municipal context.

### B. The Village Board did not violate separation of powers principles.

¶30 Tharp also contends that the Village Board violated separation of powers principles because "[a] [m]unicipal court is a part of the judicial branch, not [a] department of the Village under the control of [the Village] Board." According to Tharp, the Village Board "abolished the judiciary's constitutional grant of power in having exclusive jurisdiction over municipal ordinances."

¶31 "The doctrine of separation of powers, while not explicitly set forth in the Wisconsin [C]onstitution, is implicit in the division of governmental powers among the judicial, legislative and executive branches." *Barland v. Eau Claire County*, 216 Wis. 2d 560, 572, 575 N.W.2d 691 (1998). We review purported violations of separation of powers principles de novo. *Id.*

¶32 Article VII, section 14 of the Wisconsin Constitution grants the legislature the power to "authorize each city, village and town to establish a municipal court." *See* WIS. CONST. art. VII, § 14. "All municipal courts shall have uniform jurisdiction limited to actions and proceedings arising under ordinances of the municipality in which established." *Id.* Additionally, the legislature has provided municipal courts the "exclusive jurisdiction over an action in which a municipality seeks to impose forfeitures for violations of municipal ordinances of the municipality that operates the court." WIS. STAT. § 755.045(1).

14

A municipal court created under WIS. STAT. ch. 755 "is a coequal branch of the municipal government." WIS. STAT. § 755.01(1). The constitution also provides:

> The judicial power of this state shall be vested in a unified court system consisting of one supreme court, a court of appeals, a circuit court, such trial courts of general uniform statewide jurisdiction as the legislature may create by law, and a municipal court if authorized by the legislature under section 14.

WIS. CONST. art. VII, § 2. Therefore, a "municipal court is a court that is constitutionally a part of the court system," and separation of powers principles apply to such courts. *See City of Milwaukee v. Wroten*, 160 Wis. 2d 207, 219-22, 466 N.W.2d 861 (1991).

¶33     In support of his argument that the Village Board impeded on separation of powers principles, Tharp relies on *Barland* and he appears to argue that the Village Board infringed upon the municipal court's exclusive authority (sometimes referred to by Tharp as a "function" or "power") "to hear violations of municipal ordinances." Tharp's arguments are undeveloped and supported only by conclusory assertions. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). Nonetheless, we will attempt to address them.

¶34     First, Tharp's statement regarding "exclusive authority" appears to be based upon WIS. STAT. § 755.045(1). However, as outlined above, that statute states that exclusive jurisdiction is limited to actions "in which a municipality seeks to impose forfeitures for violations of municipal ordinances." *See id.* Tharp does not explain how a municipality infringes upon separation of powers principles by choosing not to enforce municipal ordinances when the statute grants the municipal court exclusive jurisdiction *if* the municipality "seeks" to enforce an

15

ordinance. Section 755.045(1) does not require ordinances to be enforced. Nor does Tharp point to any other statute or constitutional provision to the contrary.

¶35 Second, Tharp relies on **Barland**, where our supreme court held that "a circuit court judge has the exclusive, inherent constitutional authority to prevent the unilateral removal of his or her judicial assistant despite the terms of a collective bargaining agreement." **Barland**, 216 Wis. 2d at 566. Specifically, the agreement provided "that in the event of a layoff, an affected employee ha[d] the right to invoke his or her seniority and move or 'bump' into a position held by an employee with less seniority within the same bargaining unit." **Id.** at 568.

¶36 In reaching its conclusion, the **Barland** court first analyzed "whether the subject matter of the legislation f[ell] within the power that is constitutionally granted to the legislature." **Id.** at 575. After the court concluded that the legislature had the constitutional power to regulate county employment, the court considered "whether the subject matter of the legislation also f[ell] within the judiciary's constitutional grant of power." **Id.** at 575-77.

¶37 In answering this question, the court determined that circuit courts have the "inherent power" "to prevent enforcement of the bumping provision against judicial assistants to circuit court judges." **Id.** at 579. The court defined a circuit court's inherent power to include those "powers which are 'essential to the expedition and proper conducting of judicial business.'" **Id.** (citation omitted). This power extends to "[t]he general control of the judicial business before" a circuit court, which means the power "to control disposition of causes on its docket with economy of time and effort." **Id.** (citation omitted).

¶38 Our supreme court explained that "[t]he courts of this state may call upon their inherent powers when needed to protect themselves against actions that

16

would 'unreasonably curtail [their] powers or materially impair [their] efficiency' in expediting and conducting their judicial business." *Id.* at 580-81 (second and third alterations in original; citation omitted). In terms of the collective bargaining agreement, the bumping provision did more than "regulate the employment of county personnel," it also "control[led] or commandeer[ed]" the judiciary's inherent power outlined above.[6] *Id.* at 584-85 (formatting altered).

¶39    The facts in **Barland** are far from those present in the instant case. The Village Board's actions did not infringe upon the municipal court's power to control "the judicial business before" the court or "control disposition of causes on its docket." Rather, the actions of the Village Board related to issues arising before conferring power to the municipal court. In other words, the Village Board did not instruct Tharp on how to operate his courtroom or restrict his ability to do so in any way. The Village Board did not affect the internal workings of his office, as did the collective bargaining agreement in **Barland**.

¶40    Furthermore, the municipal court was created by the Village pursuant to legislative approval. *See* WIS. CONST. art. VII, § 14; WIS. STAT. § 755.01(1). For example, this is not a situation where the legislature is attempting to remove a court's power granted to the court under the state constitution. There is no separation of powers violation because the Village is the executive and legislative branch when it comes to the municipal court. The

---

[6] "There are generally three areas in which courts have exercised inherent authority." *City of Sun Prairie v. Davis*, 226 Wis. 2d 738, 749, 595 N.W.2d 635 (1999). Because Tharp appears to focus on only one of the three inherent powers—the power "to control disposition of causes on its docket with economy of time and effort"—we need not analyze the remaining two. *See Barland v. Eau Claire County*, 216 Wis. 2d 560, 579, 575 N.W.2d 691 (1998) (citation omitted).

17

Village can create ordinances, and it can determine to enforce them or not, pursuant to *Vretenar*. The Village Board's discretionary decision to not enforce the ordinances is no different from a prosecutor deciding not to enforce a statute. Put differently, the Village Board's decision is no more a violation of separation of powers principles than a prosecutor's decision not to prosecute certain crimes— that is to say, no violation at all. *See Vretenar*, 144 Wis. 2d at 664-65.

> *By the Court.*—Order affirmed.

> Not recommended for publication in the official reports.